IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2002

## STANLEY MILLS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 235372    Douglas A. Meyer, Judge**

_____

**No. E2002-00262-CCA-R3-PC**
**March 5, 2003**
_____

The petitioner, Stanley Mills, appeals the Hamilton County Criminal Court's denial of his petition for post-conviction relief from his conviction for second degree murder and resulting twenty-year sentence. He contends that he received the ineffective assistance of counsel because his trial attorney did not (1) prepare for trial adequately; (2) object to the trial court's erroneous jury instruction regarding his possible sentences; and (3) object to the trial court's amending his judgment of conviction to reflect that he was to serve one hundred percent of his sentence instead of thirty percent. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

John G. McDougal, Chattanooga, Tennessee, for the appellant, Stanley Mills.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; and Rodney C. Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the petitioner's killing the victim, Keith Hood. The record reflects that the petitioner was indicted for first degree murder but convicted by a jury of second degree murder. On appeal, this court affirmed the conviction and stated the following facts:

> On May 5, 1996, Appellant attended a party at the YMCA in Chattanooga. At approximately 2:00 a.m. most of the attendees, including the Appellant, left the party and gathered at a neighborhood market. While at the market, a couple of individuals, including Appellant's brother, fired guns into the air. Appellant had stolen a

gun from his father. Before leaving the market, Appellant obtained the gun from his brother and left with two of his friends. He was seated in the back seat of the vehicle. As Appellant and his friends rode away, another vehicle, driven by the victim (Mr. Hood), came upon them and swerved in front of their vehicle. Appellant claimed that Mr. Hood had threatened him, and actually shot at him one week prior to this, so when he saw Hood swerve in front of them Appellant claimed he feared for his life. While Mr. Hood was stopped at a traffic light, the vehicle in which Appellant was a passenger approached Mr. Hood's vehicle in the left-turn lane. Appellant's vehicle stopped just before coming parallel to Mr. Hood's vehicle. Appellant asked to be let out of the car so that he could "handle some business." Appellant claimed he attempted to flee, but Hood's maneuvering of the vehicle "made him think it was useless." There was no other testimony concerning an attempt to flee. Appellant claimed that he heard the "pop" of Hood's electric locks and believed that Hood was getting out of the car to hurt him, so he shot at Hood from the passenger side of Hood's car. The bullet entered Hood's heart and caused internal bleeding, which led to death after only a few minutes. The investigation after the shooting revealed that Hood had never unlocked his doors and no weapon was found in his car.

State v. Stanley Warren Mills, No. 03C01-9810-cr-00368, Hamilton County, slip op. 2-3 (Tenn. Crim. App. July 13, 1999), app. denied (Tenn. Jan. 24, 2000).

At the evidentiary hearing, the petitioner testified that he met with his attorney only two or three times before trial. He said that they discussed trial strategy and that his attorney planned to argue the petitioner shot the victim in self-defense. He said that at trial, though, his attorney argued he was guilty of manslaughter. He said he gave his attorney the names of two witnesses, Carlos Stegall and Caprice McCroskey, who had seen the victim threaten him. He said his attorney agreed to interview the witnesses but later told him the defense did not need them. He said that to his knowledge, an investigator did not work on his case.

The petitioner testified that he confessed to the police. He said he and his attorney did not talk about why he confessed or about suppressing his confession. He said that he thought the trial court sentenced him to twenty years as a Range I, standard offender but that when he got to the Department of Correction (DOC), someone told him he would have to serve one hundred percent of his sentence. He said he should have received a mental evaluation before trial because he was only sixteen years old when he shot the victim. He said he did not believe his attorney met with him after trial.

On cross-examination, the petitioner testified that he spoke with his father for about one and one-half minutes before he confessed to the police, that he and his father signed a waiver of rights

form, and that his father was present during his confession. He acknowledged that although his attorney did not call Mr. Stegall and Mr. McCroskey to testify, his attorney called other witnesses to testify that the victim had previously threatened the petitioner and shot at him. He said he testified at trial that he was afraid of the victim, and he acknowledged that his attorney argued to the jury that he shot the victim out of fear. He also acknowledged that his attorney called nine witnesses for the defense and that the jury found him guilty of second degree murder instead of first degree murder.

The petitioner's trial attorney testified that he had been practicing law since 1987 and that he was appointed to represent the petitioner at trial and on appeal of the petitioner's convictions. He said that he did not remember how many times he met with the petitioner before trial but that it was more than three or four times. He said that during the meetings, he and the petitioner discussed the facts of the case, witnesses, and trial strategy. He said the defense's strategy was to argue that the petitioner acted in self-defense. He said that if a self-defense theory did not work, he hoped to convince the jury that the petitioner was guilty only of manslaughter. He said that he discussed this two-tiered strategy with the petitioner and that he thought the petitioner understood it.

The attorney testified that he did not believe an investigator was necessary for the case and that the trial court would not have appointed one anyway because it was not a capital case. He said he was able to investigate the case adequately and that he talked to every witness the petitioner told him about except Mr. Stegall and Mr. McCroskey. He said that Mr. Stegall and Mr. McCroskey had been friends with the victim and had been either unavailable for an interview or not helpful to the defense. He said he did not file a motion to suppress the petitioner's confession because the police had read the petitioner his rights and because the petitioner's father had been present during the confession. He said he did not request a mental evaluation for the petitioner because the petitioner was bright and did not seem to have any mental problems.

The attorney testified that he was able to introduce into evidence the victim's prior conviction for carrying a weapon. He said that the petitioner's original judgment of conviction, which was filed on February 2, 1998, showed that the petitioner was sentenced as a Range I, standard offender but that the trial court filed an amended judgment on July 30, 1999, showing that the petitioner had to serve one hundred percent of his sentence. He said that he did not object to the trial court's amending the judgment. He acknowledged that he may have requested that the trial court instruct the jury on the petitioner's possible ranges of punishment. He said that when he filed the petitioner's motion for new trial, he did not have the petitioner's trial transcript because he had loaned it to the petitioner's father. He said that in the appeal of the petitioner's convictions, he raised only two issues and that if he had had the trial transcripts, he may have raised an issue regarding the trial court's instructing the jury on the petitioner's possible ranges of punishment.

On cross-examination, the petitioner's attorney acknowledged that he was able to present testimony about the victim's being a drug dealer and the victim's chasing and shooting at the petitioner two weeks before the petitioner killed the victim. He acknowledged that in addition to the petitioner's confession, some of the state's witnesses identified the petitioner as the person who shot the victim.

In denying the petition for post-conviction relief, the trial court noted that the petitioner's trial attorney testified that he met with the petitioner and that they discussed the facts of the case, witnesses, and trial strategies. The trial court noted that the petitioner never said he was unable to communicate with his attorney adequately. The trial court determined that the attorney did not abandon a self-defense strategy and stated that the trial attorney's defense strategy had been "successful in part" because the jury found the petitioner guilty of second degree murder. The trial court believed that the attorney interviewed all of the state's and defense's important witnesses and that he properly investigated the petitioner's case. As to the attorney's failure to file a motion to suppress the petitioner's confession, the trial court determined that the evidence suggested the petitioner gave his confession knowingly and voluntarily. Finally, as to the petitioner's claim that the trial court improperly instructed the jury regarding his possible punishments, the trial court held that it properly instructed the jury according to the statute in effect at the time of the petitioner's trial.

The petitioner raises several issues regarding his receiving the ineffective assistance of counsel. While the state argues that the trial court properly determined that the petitioner received the effective assistance of counsel, it also contends that this court should dismiss his appeal because the petitioner's notice of appeal was untimely filed and because he gave no cause for the delayed filing. Our review of the appellate record reveals that the trial court filed its order denying the petitioner post-conviction relief on September 4, 2001, and that the petitioner filed his notice of appeal on December 14, 200l, well beyond the thirty-day requirement in Rule 4(a), T.R.A.P. Also, as the state correctly notes in its brief, the petitioner failed to provide any reason for the late-filed notice of appeal. We do not understand why the petitioner has failed to respond to the state's argument for dismissing this appeal. Nevertheless, we note that the filing of the notice of appeal may be waived in the interest of justice. See T.R.A.P. 4(a). This being the petitioner's only post-conviction case, we believe the circumstances allow us to waive the notice of appeal.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629

-4-

S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## I. TRIAL PREPARATION

The petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to file a motion to suppress, failed to meet with him adequately before trial, and failed to discuss trial procedures and strategies with him sufficiently. The state claims that the petitioner received the effective assistance of counsel. We agree with the state.

The petitioner's trial attorney testified at the evidentiary hearing that he could not remember how many times he met with the petitioner but that it was more than three or four times. He also said that during the meetings, he and the petitioner discussed the facts of the case, witnesses, and the defense strategy. As the trial court correctly noted, the petitioner never said he was unable to communicate adequately with his attorney. As to the petitioner's argument that his attorney abandoned a self-defense strategy, the attorney testified that he argued self-defense to the jury and that a defense witness testified that two weeks before the petitioner shot the victim, the victim had chased and shot at the petitioner. In addition, the petitioner acknowledged that he testified at trial that he was afraid of the victim. Our review of the trial transcript reveals that the petitioner's attorney argued self-defense to the jury during closing argument and that the trial court instructed the jury on self-defense. As to the petitioner's claim that his attorney should have filed a motion to suppress, the petitioner did not allege at the evidentiary hearing that he made his confession unknowingly or involuntarily. To the contrary, he said he agreed to give a statement to the police, that the police let him speak to his father before he gave the statement, that he and his father signed a waiver of rights form, and that his father was present during his confession to the crime. We conclude that the petitioner has failed to show that he received the ineffective assistance of counsel.

## II. JURY INSTRUCTIONS

Next, the petitioner claims that he received the ineffective assistance of counsel because his attorney failed to object when the trial court erroneously instructed the jury on the minimum number of years he had to serve for the offense charged and all lesser included offenses. Specifically, he

argues that the jury instructions were improper because the instructions included the possibility that he could be sentenced as an especially mitigated offender. He contends that the trial court should have instructed the jury on the minimum sentences for a standard offender.

At the time of the petitioner's trial, a trial court was required, upon motion by either party, to instruct the jury on the "possible penalties of the offense charged and all lesser included offenses." Tenn. Code Ann. § 40-35-201(b)(1) (1997) (amended 1998) (emphasis added). The trial court had to include in this instruction the "minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date." Tenn. Code Ann. § 40-35-201(b)(2)(A)(i) (1997) (amended 1998). In calculating a defendant's earliest release eligibility date, a trial court had to take into account the "release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable." Tenn. Code Ann. § 40-35-201(b)(2)(A)(i) (1997) (amended 1998).

At the petitioner's trial, the trial court instructed the jury as follows:

> Range of punishment: The jury will not attempt to fix any sentence. However, you may weigh and consider the meaning of a sentence of imprisonment.
> The range of punishment for the crimes involved herein is as follows: First degree murder, life; second degree murder, 15 to 25 years; voluntary manslaughter, three to six years; reckless homicide, two to four years; criminally negligent homicide, one to two years.
> You're further informed that the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest release eligibility date is: First degree murder, 51 years; second degree murder, 12.75 years; voluntary manslaughter, .36 years; reckless homicide, .24 years; criminally negligent homicide, .21 years.
> Whether a defendant is actually released from incarceration on the date when they are first eligible for release is a discretionary decision made by the board of paroles and is based on many factors. The board of paroles has the authority to require a defendant to serve the entire sentence imposed by the Court.

The petitioner claims that the trial court erred by instructing the jury on the minimum number of years he had to serve as a Range I, especially mitigated offender instead of as a Range I, standard offender. We note that pursuant to Tenn. Code Ann. § 40-35-501(b), an especially mitigated offender may be eligible for release after serving twenty percent of his sentence, whereas a standard offender must serve thirty percent of his sentence before he is eligible for release. In effect, the petitioner claims that by instructing the jury on his release eligibility as an especially mitigated

offender, the trial court misled and confused the jury. In addition, he contends that his attorney rendered deficient performance by failing to object to the improper instruction and that he was prejudiced by the deficiency.

In support of his argument, the petitioner cites State v. Cook, 816 S.W.2d 322 (Tenn. 1991). In Cook, the trial court was required by statute to sentence the defendant as a Range II offender. Instead, the trial court mistakenly instructed the jury on the possible ranges of punishment for a Range I offender. On appeal, the defendant argued "that had the jury been instructed on the correct sentencing range, . . . 'they could have exercised their discretion to convict of a lesser included offense.'" Id. at 324. In other words, the defendant claimed that the trial court's erroneous instructions on the less severe punishments caused the jury to convict him of a greater offense. Our supreme court agreed, stating, "whatever rights or benefits the Legislature had in mind for the defendant when it passed T.C.A. 40-35-201(b) would be lost if the defendant were to be sentenced to punishments greater than what the jury finding guilt was instructed would be imposed."

Initially, we note that the petitioner was convicted of second degree murder and, therefore, has no release eligibility. See Tenn. Code Ann. § 40-35-501(i)(1)-(2). Nevertheless, his sentence could be reduced up to fifteen percent for sentence reduction credits. See Tenn. Code Ann. § 40-35-501(i)(1). Thus, his Range I minimum fifteen-year sentence for a Class A felony could be reduced from fifteen years to12.75 years. The trial court instructed the jury that the petitioner would have to serve a minimum of 12.75 years in confinement if convicted of second degree murder and made no error as to the sentencing instruction for that offense. The petitioner's claim may still have merit, though, if the trial court erroneously instructed the jury on voluntary manslaughter and the error could have impacted the jury's verdict. We conclude that if the trial court gave an erroneous instruction, it did not affect the jury's verdict.

The minimum punishment for a Range I offender convicted of voluntary manslaughter, a Class C felony, is three years or thirty-six months. See Tenn. Code Ann. §§ 39-13-211(b), 40-35-112(a)(3). Moreover, unlike second degree murder, no statute bars a defendant convicted of voluntary manslaughter from being sentenced as an especially mitigated offender. Therefore, pursuant to Tenn. Code Ann. § 40-35-501(b), a defendant convicted of voluntary manslaughter may be eligible for release after serving twenty percent of his sentence or 7.2 months. If, however, the trial court determines that the defendant is not an especially mitigated offender, then the defendant will have to serve thirty percent of his sentence as a standard offender and will not be eligible for release until he has served 10.8 months in confinement.

In this case, even if the trial court improperly instructed the jury on the less severe punishment for voluntary manslaughter, we believe the 3.6 month difference is harmless error. Unlike Cook, in which the differences in punishment for Range I and Range II offenders were significant, the difference in this case was minor. Therefore, the less severe punishment instruction for voluntary manslaughter did not cause the jury to convict the petitioner of second degree murder. The petitioner has not demonstrated that he was prejudiced by his attorney's failure to object to an erroneous instruction, and he is not entitled to relief.

### III.  AMENDED JUDGMENT

Finally, the petitioner claims that he received the ineffective assistance of counsel because his attorney failed to object to the trial court filing an amended judgment of conviction almost one and one-half years after the original judgment was filed.  The state contends that the trial court properly amended the judgment and, therefore, that the petitioner's attorney was not ineffective for failing to object.  Initially, we note that the petitioner did not raise this issue in his pro se or amended petitions for post-conviction relief.  Although his attorney mentioned the issue briefly at the evidentiary hearing, the trial court did not address it in its order denying his post-conviction petition.  As a general rule, this court will not address post-conviction issues that were not raised in the petition or addressed in the trial court.  See State v. Smith, 814 S.W.2d 45, 49 (Tenn. 1991).  In any event, we conclude the petitioner is not entitled to relief.

The original judgment of conviction that the trial court filed on February 5, 1998, states that the trial court sentenced the petitioner as a standard offender with release eligibility after serving thirty percent of his sentence.  However, as we have stated, a defendant convicted of second degree murder does not have release eligibility and must serve one hundred percent of his sentence.  See Tenn. Code Ann. § 40-35-501(i)(1)-(2).  Therefore, the petitioner's sentence as a standard offender was in direct contravention to Tennessee Code Annotated § 40-35-501(i) and illegal.  See Dixon v. Holland, 70 S.W.3d 33, 37 (Tenn. 2002).  A trial court "may correct an illegal . . . sentence at any time, even if it has become final."  State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978).  Therefore, the trial court properly corrected the judgment, and the petitioner's attorney was not ineffective for failing to object to the trial court's filing an amended judgment of conviction.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the petition for post-conviction relief.

_____
JOSEPH M. TIPTON, JUDGE